UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Carl E. Gaudreault

     v.                          Civil No. 11-cv-73-JL
                                      Opinion No. 2012 DNH 108
Michael J. Astrue, Commissioner,
Social Security Administration

**MEMORANDUM ORDER**

This is an appeal from the denial of plaintiff Carl E. Gaudreault's application for Social Security benefits. See 42 U.S.C. § 405(g). The administrative law judge ("ALJ") found that Gaudreault, though suffering from depression, was not disabled because his depression did not significantly limit his physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

Gaudreault has moved for an order reversing that decision, see L.R. 9.1(b)(1), arguing that the ALJ failed to fully develop the administrative record, and, due in part to this failure, incorrectly concluded that Gaudreault's mental health impairments were not severe.[1] The Commissioner of the Social Security

---

[1] Gaudreault argued to the ALJ that he was disabled by virtue of a combination of mental health impairments and back pain, an allegation repeated in his complaint. See Compl. ¶ 8. His motion, however, focuses exclusively on his depression and other mental health impairments. To the extent Gaudreault claims that the ALJ erred in determining that his back pain, either alone or in combination with those impairments, was not severe, that argument is not fully developed and therefore waived. Cf. McGrath v. Astrue, 2012 DNH 060, 3 n.5.

Administration ("SSA") has cross-moved for an order affirming that decision, see L.R. 9.1(d), arguing that the ALJ fulfilled his duty to develop the record and that his findings are supported by substantial evidence.  This court has subject-matter jurisdiction under 42 U.S.C. § 405(g) (Social Security).  After reviewing the administrative record, the parties' joint statement of material facts, and their respective memoranda, the court concludes that, even though the ALJ's finding that Gaudreault's depression was not severe was supported by substantial evidence in the record before him, the ALJ did not adequately develop that record as he was required to do.  See, e.g., Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  Because remand to the ALJ is necessary for this purpose, the court grants Gaudreault's motion and denies the Commissioner's motion.

I.  **Applicable legal standard**

    This court's review under § 405(g) is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  The ALJ is responsible for determining issues of credibility, resolving conflicting evidence, and drawing inferences from the evidence in the record. See Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  If the ALJ's factual findings are supported

2

by substantial evidence in the record, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted), they are conclusive, even if the court does not agree with the ALJ's decision and other evidence supports a contrary conclusion.  See 42 U.S.C. § 405(g); Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988).  The ALJ's findings are not conclusive, however, if they were "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen, 172 F.3d at 35.  If the ALJ made a legal or factual error, the decision may be reversed and remanded to consider new, material evidence, or to apply the correct legal standard. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996); see 42 U.S.C. § 405(g).

## II.  **Background**

Pursuant to this court's local rules, the parties filed a Joint Statement of Material Facts (document no. 14), which is part of the record reviewed by the court.  See LR 9.1(d).  This court will briefly recount the key facts and otherwise incorporates the parties' joint statement by reference.

Gaudreault filed applications for disability insurance benefits and supplemental security income in October 2007, claiming he became disabled in June 1998 due to anxiety, panic

attacks, depression, post-traumatic stress disorder, sleep problems, and back problems.  Admin. R. at 155, 160.  Gaudreault, who was 36 years old at the date of filing, reported that he had "a horrible sleeping pattern," "panic attacks," "high anxiety around people," "lack of self ambition," and "low self esteem." Id. at 160, 173.  He further stated that he was experiencing "high depression, stress, and anger."  Id. at 171.  Neither these symptoms nor his pain were remedied by medication, according to Gaudreault.  Id. at 172.  Gaudreault also reported that he had worked at four jobs since becoming disabled, and that he had left each of those jobs within two months due to his medical conditions.  Id. at 143-44, 151, 153.

The SSA initially denied Gaudreault's applications on March 18, 2008.  Id. at 67-68.  Gaudreault appealed that decision to the ALJ.  See generally 20 C.F.R. § 405.301 et seq.  A hearing before the ALJ was initially scheduled for April 12, 2010, but was later rescheduled to July 21, 2010 after Gaudreault requested a postponement in order to obtain counsel.  See Admin. R. at 37, 42.  The July 21, 2010 hearing was also rescheduled at Gaudreault's request so he could obtain counsel, this time to September 13, 2010.  See id. at 37-38.  In agreeing to the second postponement, the ALJ advised Gaudreault that no further postponements would be granted.  Id. at 38.

Gaudreault was finally able to retain an attorney on September 3, 2010.  On September 9, 2010, Gaudreault's attorney requested that the hearing be postponed another two months so that the record could be adequately developed, or, in the alternative, that the record be kept open for 60 days after the hearing to allow additional time for development.  Id. at 119-20. At the time, the record contained no medical records before January 8, 2003 (despite Gaudreault's claimed onset date of June 1998) or after January 20, 2009.  The ALJ denied the request for postponement, and the hearing proceeded as scheduled.  At the hearing, Gaudreault's attorney repeated his request that the ALJ keep the record open for an additional 60 days.  Id. at 43-44, 50.  The ALJ ultimately denied that request as well, stating that "[t]he possibility of finding records of alleged events occurring 10 to 21 years prior to the alleged onset date is not sufficient cause to further extend decision on the claim."  Id. at 15.

At the hearing, Gaudreault testified that he had "a lot of anxiety being around people," and that he was not "able to achieve the kind of things that they ask me to do, and the manner they ask me to do them."  Id. at 51-52.  He stated that he became "stressed and overwhelmed, and it interferes with the quality of work that they want, which it's depressing, and it gives me a heightened anxiety."  Id. at 52.  He felt stress and anxiety daily, id. at 56, and "[a]t least once a week" he experienced

5

stress when he became "overwhelmed by a lot of duties" or when somebody criticized or yelled at him.  Id. at 54-55.  When around people, Gaudreault became "very agitated."  Id. at 55.  He also sometimes became "very stressed," "argumentative," and "explosive."  Id.  Gaudreault also testified that he tried to remove himself from stressful situations "rather than blowing up and having a bad altercation."  Id. at 54.

Gaudreault also stated that he could not "be in like one place doing the same thing for many hours," because that caused him anxiety.  Id. at 56.  He stated that he could not "concentrate for any period of time on anything," and that to do so made him "agitated, aggravated."  Id. at 57.  According to Gaudreault, he'd had these problems "[a]lmost all" his life, at least "since [he] was a young teenager."  Id.

Seven days after the hearing, on September 20, 2010, the ALJ issued an order concluding that Gaudreault did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." Id. at 17.  In reaching this conclusion, the ALJ found that the records Gaudreault had submitted "do not indicate that his medically determinable impairments cause more than a minimal effect on his ability to perform basic physical and mental work activities."  Id. at 18.  As to Gaudreault's mental health

6

impairments, the ALJ noted that the evidence did not "suggest that [Gaudreault] suffered from anxiety or depression at a severe level." Id. at 19.  In particular, the ALJ gave great weight to the opinions of two medical consultants, one of whom opined that Gaudreault's limitations were mild, see id. at 20; see generally id. at 244-56, the other of whom opined that Gaudreault was "able to maintain attendance and schedules, make simple decisions, and interact appropriately with supervisors," see id. at 20; see generally id. at 258-63.

The ALJ's decision was selected for review by the Decision Review Board ("DRB").  See 20 C.F.R. § 405.401 et seq.  On October 5 and 26, 2010, Gaudreault submitted the following additional evidence to the DRB:  medical records from Mary Hitchcock Memorial Hospital from 1987 through 1989, from the New Hampshire Department of Corrections from March 2008 through June 2010, and from West Central Services from April 1987 through January 2004.  Admin. R. at 6-10; see 20 C.F.R. § 405.373.  The DRB affirmed the ALJ's decision on December 17, 2010, thereby making the ALJ's decision the final decision of the SSA.  In so doing, the DRB noted that although it had considered the additional evidence Gaudreault had submitted, that evidence "does not provide a basis for changing the [ALJ's] decision."  Admin. R. at 1.  Gaudreault filed this appeal on February 18, 2011.

7

III. **Analysis**

A five-step process is used to evaluate an application for social security benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden, through the first four steps, of proving that he is disabled, i.e., that (1) he is not engaged in substantial gainful activity; (2) he has a severe impairment; (3) the impairment meets or equals a specific impairment listed in the Social Security regulations; and (4) the impairment prevents or prevented him from performing past relevant work. Id.; see Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the SSA bears the burden of showing that the claimant has the residual functional capacity to perform other work that may exist in the national economy. Freeman, 274 F.3d at 608; see 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "[A]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Freeman, 274 F.3d at 608. In the present case, the ALJ denied Gaudreault's application at step two, concluding that although Gaudreault had medically determinable depression, that impairment (either alone or in combination with Gaudreault's claimed back strain) was not severe.

"Great care should be exercised" in applying step two's severity requirement, which is "a de minimis policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y

of H.H.S., 795 F.2d 1118, 1124-25 (1st Cir. 1986).  Application of the requirement is governed by 20 C.F.R. §§ 404.1520(c) and 416.920(c), which provide that an applicant must have an "impairment or combination of impairments which significantly limits [the] physical or mental ability to do basic work activities" in order to be considered as disabled.  "[W]hen medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered," a finding of severity, and concomitantly, disability, is not warranted.  Social Security Ruling ("SSR") 85-28, Titles II and XVI: Medical Impairments That Are Not Severe, 1985 WL 56856, *3 (S.S.A. 1985).  The court finds no error in the ALJ's denial of Gaudreault's application at step two, based upon the record before the ALJ at the time of the hearing.

In determining whether Gaudreault's claimed mental impairment is severe, the ALJ was required to make a specific finding regarding Gaudreault's degree of limitation in each of four functional areas, to wit:  (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3)-(4), 416.920a(c)(3)-(4).  The ALJ found that Gaudreault's limitation was mild, at most, in the first three

9

categories and that he had experienced no episodes of decompensation, leading to the conclusion that Gaudreault's mental impairments were not severe. See Young v. Astrue, 2011 DNH 140, 17 ("If the ALJ rates the limitation in the first three areas as none or mild, and in the fourth area as none, the ALJ will likely conclude that the impairment is not severe."); see also 20 C.F.R. §§ 416.920a(d)(1), 1520a(d)(1).

The record provides ample support for those findings. Independent consultant Dennis Becotte, PhD, examined Gaudreault's medical records and conducted an in-person interview with Gaudreault. Becotte diagnosed Gaudreault with a Schizoid Personality Disorder. See Admin. R. at 262. Though Becotte noted that "[p]eople with Schizoid Personality Disorder tend to be able to function well one-on-one but do not seek out social relationships and prefer solitary activities," he observed that Gaudreault had "been able to develop relationships," and opined that Gaudreault was "able to interact appropriately and communicate effectively with others." Id. at 263. Becotte further observed that Gaudreault's "behavior clearly demonstrated orientation and awareness of subtle social clues and was superficially respectful but manipulative," that there was no evidence of any thought disorder, and that Gaudreault, despite his reported anxiety, "was able to participate in the interview, concentrate, and complete tasks." Id. at 261-63. Finally,

10

Becotte opined that Gaudreault "appears able to maintain attendance and schedules, make simple decisions and interact appropriately with supervisors as required," and that Gaudreault's "inability to adapt to work does not seem . . . related to his anxiety, depression, or personality disorder as much as it being related to his spending periods of time in jail and being unable to establish a good pattern of reliable work history." Id. at 263.

Becotte's opinions were further supported by the report of consulting expert J. Coyle, PhD, who also examined Gaudreault's records. Coyle opined that Gaudreault has anxiety-related disorders, personality disorders, and substance addiction disorders. Id. at 244, 249, 251-52. Despite these disorders, Coyle opined that Gaudreault was only mildly limited in his daily living activities, social functioning, and concentration, persistence, and pace. Id. at 254; see also id. at 256 ("Limitations associated with psych impairments are mild or less. Psych is not severe."). The opinions of Becotte and Coyle together constitute adequate evidence to support the ALJ's findings that Gaudreault had only mild limitations in his activities of daily living, social functioning, and concentration, persistence, or pace. See Richardson, 402 U.S. at 401. Furthermore, Gaudreault has not identified any episode of decompensation, and none is apparent to the court based upon its

11

review of the record, so the ALJ's finding to that effect was
also supported.

Gaudreault argues that the ALJ "ignored key parts of the
medical evidence in the record" at the time of his decision.  The
specific evidence Gaudreault points to, however, consists only of
(a) the Global Assessment of Functioning, or "GAF," scores
assigned him by his counselor and (b) Gaudreault's own,
subjective, reports of how his ailments affected him, documented
in his medical records.  As regards the former, GAF scores have
limited utility in determining the existence or severity of an
individual's mental impairment, as another judge of this court
has previously noted.  See Eaton v. Astrue, 2009 DNH 102, 21
(Barbadoro, J.); see also Lopez v. Barnhart, 78 Fed. Appx. 675,
678 (10th Cir. 2003) (An "assessment of claimant's GAF score,
standing alone, does not undermine, nor is it significantly
probative evidence in opposition to, the ALJ's ultimate
conclusions concerning the seriousness of claimant's mental
status or ability to work.").  Moreover, where, as here, a GAF is
unaccompanied by any suggestion that the claimant cannot work, a
GAF "may have little or no bearing on the subject's social and
occupational functioning" and is not grounds for reversing an
ALJ's decision.  Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx.
496, 511 (6th Cir. 2006).  And, as regards Gaudreault's
subjective reports of his ailments, this court has previously

12

noted that "[o]nly medical evidence may be used to support a
finding that an impairment or combination of impairments is
severe, as a claimant's 'statements alone are not enough to
establish that there is a physical or mental impairment.'" Ault
v. Astrue, 2012 DNH 005, 12 n.14 (quoting 20 C.F.R. §
404.1528(a)).

        In sum, the evidence Gaudreault relies upon does not
undermine the ALJ's findings, which were supported by substantial
evidence in the record.  That does not dispose of Gaudreault's
appeal, however, because the ALJ did not adequately develop the
record of his mental impairments, and in particular, records of
Gaudreault's impairments before 2003.  Proper consideration of
those records may well have changed the outcome of the ALJ's step
2 analysis.

        "Because Social Security proceedings are not adversarial in
nature, the [SSA has] a duty to develop an adequate record from
which a reasonable conclusion can be drawn." Heggarty v.
Sullivan, 947 F.2d 990, 997 (1st Cir. 1991) (internal citation
and quotation marks omitted).  "This duty to develop the record
is heightened where the claimant is not represented by counsel,
but applies in all cases." Brunel v. Barnhart, No. 00-cv-402,
2002 WL 24311, *8 (D.N.H. Jan. 7, 2002) (citing 20 C.F.R. §
404.1512(d)).  The duty is also heightened "if there is a gap in
the record and the ALJ could have filled in that gap without

13

undue effort." Price v. Astrue, 2008 DNH 164, 13-14 (citing
Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598
(1st Cir. 1980)).  "If the ALJ fails to fill those evidentiary
gaps, and if they prejudice plaintiff's claim, remand is
appropriate." Mandziej v. Chater, 944 F. Supp. 121, 130 (D.N.H.
1996).

     As already mentioned, there were significant gaps in the
record before the ALJ.  Though Gaudreault claimed an onset of
disability in June 1998, the record contained no medical records
from before January 8, 2003.[2]  The ALJ was clearly aware of this
gap, as he specifically noted it both at the hearing and in his
decision.  See Admin. R. at 14, 49.  Gaudreault's initial
application, moreover, indicates that as early as 1993, he had
been assigned to the psychiatric ward while incarcerated at the
state prison in Concord, where he had been given counseling and
medications.  Id. at 162.  The application further indicates that
Gaudreault was hospitalized at both Dartmouth-Hitchcock Medical
Center and Hampstead Hospital in the 1990s for suicide attempts,
id. at 162-63, and that he had been treated at West Central
Behavioral Health in Lebanon, New Hampshire as early as 1987 for
depression.  Id. at 164.  Thus, the absence of medical records

---

     [2]Similarly, though the hearing was held on September 13,
2010, the record contained no records later than January 20,
2009.

predating 2003 was a particularly obvious deficiency in the record.  Cf. Dawes v. Astrue, 11-cv-272, 2012 WL 1098449, *6 (D. Me. March 30, 2012) (two-year gap in medical records "should have triggered in the administrative law judge an attempt to account for the two-year interim period").

The ALJ could have remedied that deficiency with little effort.  As was also already mentioned, Gaudreault was unrepresented by counsel until a mere ten days before the hearing (no doubt accounting in large part for the omissions from the record).  When counsel entered his appearance on Gaudreault's behalf, he requested that the hearing be continued or, in the alternative, that the record be kept open post-hearing so he could submit additional medical records; the ALJ refused both requests.  While the court appreciates the ALJ's reluctance to continue the hearing a third time on such short notice, his refusal to keep the record open after the hearing is harder to understand, especially when Gaudreault had been proceeding without the benefit of counsel for so long and there were glaring gaps in his medical history.  Doing so would have entailed little or no extra effort on the ALJ's part, and would not have delayed decision of Gaudreault's claim by a significant period of time.

This gap in the evidence may well have prejudiced Gaudreault's claim.  "Prejudice is demonstrated by showing that the additional evidence might have led to a different decision."

15

Alker v. Astrue, 2011 DNH 075, 12 (citation and internal
quotations omitted).  Here, the evidence Gaudreault submitted to
the DRB after the ALJ issued his decision demonstrates a lengthy
history of mental impairment beginning in Gaudreault's teens and
continuing to adulthood.  Mark Linett, Gaudreault's treating
counselor beginning in 1987, initially diagnosed Gaudreault with
a conduct disorder[3] on August 24, 1987.  See Admin. R. at 375.
Not long thereafter, Gaudreault made the first of two documented
suicide attempts, which resulted in a hospital placement at
Hampstead Hospital for a period of about six weeks.  Id. at 358-
59, 376-78; see also id. at 364.  In 1989, Gaudreault was again
hospitalized for a suicide attempt, and was diagnosed as having
an adjustment disorder with depressed mood[4] as well as a conduct
disorder.  Id. at 365.  In 1992, Gaudreault resumed treatment
with Linett, who diagnosed him with an antisocial personality

---

[3]A conduct disorder, which may present in several different
ways, is demonstrated by "a repetitive and persistent pattern of
behavior in which the basic rights of others or major age-
appropriate societal norms or rules are violated."  Am.
Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental
Disorders 93 (4th ed., text revision 2001) ("DSM-IV").

[4]An adjustment disorder with depressed mood is demonstrated by
"a psychological response to an identifiable stressor or
stressors that results in the development of clinically
significant emotional or behavioral symptoms"; "the predominant
manifestations are symptoms such as depressed mood, tearfulness,
or feelings of hopelessness."  DSM-IV 679.

disorder.[5]  Id. at 390.  Later that year, Linett opined that
Gaudreault's mental impairments rendered him "unable to work or
attend school," and that he had no socialization skills."  Id. at
393.  As a result, Linett certified that Gaudreault was "severely
mentally ill" and that, in the absence of services, he would
"exhibit a deteriorating clinical course."  Id. at 394.
Following this certification, there appears to be a nine-year gap
in Gaudreault's medical history (apparently attributable in part
to incarceration).  In 2001, Gaudreault again saw Linett, who
diagnosed him with a dysthymic disorder[6] as well as antisocial
personality disorder.  Id. at 401.  And, while incarcerated in
the New Hampshire State Prison from 2008-2010, Gaudreault
continued to exhibit symptoms of a depressive disorder, requiring
ongoing mental health counseling and medication.  See generally
id. at 298-346.

     In short, over a lengthy period of time beginning before and
continuing after his alleged onset of disability, Gaudreault's

---

     [5]An antisocial personality disorder is demonstrated by "a
pervasive pattern of disregard for, and violation of, the rights
of others that begins in childhood or early adolescence and
continues into adulthood," DSM-IV 701; "deceit and manipulation
are central features" of the disorder, which is also referred to
as psychopathy, sociopathy, or dyssocial personality disorder.
Id. at 702.

     [6]A dysthymic disorder is demonstrated by "a chronically
depressed mood that occurs for most of the day more days than not
for at least 2 years."  DSM-IV 376.

mental health appears to have steadily (if slowly) declined, so
much so that at one point, his primary counselor opined that he
was incapable of working.  To be sure, those "[m]edical opinions
that predate the alleged onset of disability are of limited
relevance." Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d
1155, 1165 (9th Cir. 2008).  Nonetheless, such evidence, "when
evaluated in combination with later evidence, may help establish
disability," particularly where--as could be the case here--"the
disabling condition is progressive." DeBoard v. Comm'r of Social
Sec., 211 Fed. Appx. 411, 414 (6th Cir. 2006) (citing Groves v.
Apfel, 148 F.3d 809, 810-11 (7th Cir. 1998)); see also Beth v.
Astrue, 494 F. Supp. 2d 979, 1006-07 (E.D. Wis. 2007) ("ALJs
should not ignore medical reports simply because they predate the
alleged onset of disability.").  The records referenced above,
which neither the ALJ nor the two consulting experts had the
opportunity to consider, could well have led the ALJ to reach a
different conclusion as to the severity of Gaudreault's
disability if they had been included in the record.[7]

---

[7]The court is not persuaded by the Commissioner's argument
that the DRB's conclusion that the additional evidence "does not
provide a basis for changing the [ALJ's] decision," Admin. R. at
1, conclusively determines that issue.  Because the consulting
experts on whose opinions the ALJ so heavily relied did not have
an opportunity to consider the full scope of Gaudreault's medical
history, the reliability of their opinions may fairly be
questioned here.  That evidence most certainly could provide a
basis for changing the ALJ's decision.

The court therefore remands the case to the ALJ for further proceedings consistent with this order.  This does not mean, of course, that Gaudreault will necessarily prove on remand that he is disabled, or even that his impairment is severe.  But in Social Security cases, it is not this court's task to weigh evidence and make findings; that is the ALJ's function. Rodriguez, 647 F.2d at 222.  The ALJ's execution of that function was hampered in this case by his failure to ensure that the record before him was reasonably complete.  On remand, the ALJ will have the opportunity to consider a more complete record and, if necessary, inquire of the consulting experts whether they would alter their opinions in light of the supplementation of the record.

IV. **Conclusion**

Pursuant to sentence four of 42 U.S.C. § 405(g), Gauldreault's motion to reverse and remand the Commissioner's decision[8] is GRANTED.  The Commissioner's motion to affirm the decision[9] is DENIED.  The Clerk of Court is directed to enter judgment in accordance with this order and close the case.

---

[8]Document no. 10.

[9]Document no. 12.

19

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 18, 2012

cc:  Bennett B. Mortell, Esq.
     Gretchen Leah Witt, Esq.